**EMILY JANE BOHANNON ROYAL,**

    *Plaintiff,*

v.                                                                                                 No. 3:18-cv-836-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

# Order

Emily Jane Bohannon Royal brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying her applications for benefits. Doc. 1. Under review is a decision by an Administrative Law Judge ("ALJ") dated August 24, 2017. Tr. 15–30. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 15–30, and the parties' briefs, Docs. 17, 18, and not fully repeated here.

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and quoted authority omitted). A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If substantial evidence supports an ALJ's decision, a court must affirm even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d

1520, 1529 (11th Cir. 1990). "This restrictive standard of review applies only to findings of fact," and "no similar presumption of validity attaches to the [Commissioner's] conclusions of law[.]" *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoted authority omitted).

Royal argues the ALJ erred in assessing opinions of Raymond Pomm, M.D., and Advanced Registered Nurse Practitioner ("ARNP") Daphne Hayes, treatment providers at River Regions Human Services, Inc. ("River Regions"). Doc. 17 at 16–21.

The Social Security Administration ("SSA") evaluates every medical opinion it receives. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012).[1] A "medical opinion" is a statement from an "acceptable medical source" that reflects judgment about the nature and severity of a claimant's impairment. *Id.* §§ 404.1527(a)(2), 416.927(a)(2) (2012). An "acceptable medical source" is a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, and qualified speech-language pathologist. *Id.* §§ 404.1513(a), 416.913(a) (2013). An ALJ must state with particularity the weight given to each medical opinion and the reasons for the weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

To determine the severity of an impairment and how it affects a claimant's ability to work, the SSA may use evidence from sources that are not acceptable medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d) (2012). Other sources include nurse practitioners. *Id.* §§ 404.1513(d)(1), 416.913(d)(1) (2013). "Since there is a requirement to consider all relevant evidence … the case record should reflect the consideration of opinions from medical sources who are not 'acceptable medical

---

[1]The Court applies the law in effect on February 9, 2015, when Royal filed her applications. The regulations have since changed, and related Social Security Ruling 06-03p (Aug. 9, 2006), has been rescinded. The revised regulations apply only to applications filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1513, 416.916 (2019); 82 Fed. Reg. 15132-01. Unless otherwise indicated, the regulations cited are those in effect in 2015, when Royal filed her applications.

2

sources[.']" Social Security Ruling 06-03p, 2006 WL 2263437 (Aug. 9, 2006).[2] "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*

On March 21, 2017, ARNP Hayes completed and signed a "Mental Capacity Assessment" form. Tr. 635–37. She checked boxes indicating Royal has marked limitations[3] in twelve areas (including limitations in the categories of "Understanding & Memory," "Sustained Concentration & Persistence," "Social Interaction," and "Adaptation"). Tr. 365–37. She checked boxes indicating Royal has extreme limitations[4] in three areas (including limitations in the categories of "Sustained Concentration & Persistence" and "Adaptation"). Tr. 365–37. She checked a box indicating Royal likely would have four or more absences in an average month. Tr. 636. The record includes another copy of this form. Tr. 666–68. It is identical to the first form, except it also includes a signature for Dr. Pomm. Tr. 668.

In his decision, the ALJ gave "no weight" to the mental capacity assessments by ARNP Hayes and Dr. Pomm, explaining:

> The 2017 mental capacity assessments completed by ARNP Daphne Hayes and a treating psychiatrist, Dr. Pomm, are given no weight as they are clearly unsupported by the totality of these medical records and statements made by the claimant to other medical providers that her depression is under control. Her presentations in front of her other medical providers do not demonstrate the kind of marked and extreme limitations that are suggested in these mental health opinions. Indeed, it does not appear that she was even seen by this psychiatrist on a regular basis and she did not recognize his name when asked at the

---

[3]"Marked" is defined as: "There is serious limitation in this area. The individual cannot generally perform satisfactorily in this area." Tr. 635.

[4]"Extreme" is defined as: "There is major limitation in this area. There is no useful ability to function in this area." Tr. 635.

3

hearing on this matter. Most of the office visits that are documented were handled by Daphne Hayes, ARNP. The records show that ARNP Hayes usually spent 15 to 20 minutes with the claimant, which is indicative of medication management and not any psychotherapy. The claimant's limitation to occasional to frequent contact with others [in the residual functional capacity ("RFC") assessment)] address her allegations of problems being around others that she claimed at the hearing and there are no other mental impairments noted or supported by this record.

Tr. 24 (internal citation omitted).

The ALJ did not have to give ARNP Hayes's opinion deference because she is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a), 416.913(a) (2013). Instead, he only had to consider her opinion and generally explain the weight given to it or otherwise ensure that his discussion would allow Royal or a reviewer to follow his reasoning. *See* SSR 06-03p, 2006 WL 2263437. The ALJ did so. Tr. 24.

Substantial evidence supports the ALJ's findings regarding ARNP Hayes's opinion. The record shows only four visits with ARNP Hayes, all of which were labeled "medication management" visits and none of which lasted longer than 35 minutes. Tr. 645, 647, 650, 653.[5] As summarized in the ALJ's decision, the record is replete with notations contemporaneous with ARNP Hayes's treatment of Royal showing a lack of mental health symptoms consistent with the marked and extreme limitations in ARNP Hayes's opinion. *See, e.g.* Tr. 463–64, 480–81, 484–85, 488, 492–93, 496, 500–01, 504–05, 512, 516, 521, 529–30, 533, 537–38, 540–42, 545–46, 549–50, 553–54, 556–56, 561–62 (treatment notes from ARNP Faith Snyder showing Royal was "[a]lert and oriented x3" and had grossly normal mental status exams, as well as normal affect and judgment despite complaints of anxiety and depression that occasionally improved and occasionally worsened); Tr. 606–07 ("Brief Behavioral Health Status Exam" from River Regions with indecipherable signature showing

---

[5]ARNP Hayes's treatment notes include start and stop times and indicate the length of the sessions; they also describe the "Service Type" as "MH Med Management." Tr. 645, 647, 650, 653.

4

normal mental status exam, including appropriate dress, realistic insight, good judgment, rational thought processes, normal speech, and normal mood and affect); Tr. 610 ("Assessment Rating Report" from counselor Amy Ros at River Regions rating depression and anxiety as "moderate" problems, a "less than slight problem" with interpersonal relations, and no problem with functioning in activities of daily living); Tr. 653 (medication management note from ARNP Hayes providing a normal mental status exam, including regular speech, euthymic mood, thought content within normal limits, adequate judgment and insight despite reports of family discord and back pain); Tr. 654 (treatment note from Ros rating depression as "slight to moderate" problem and anxiety as "moderate" problem and noting "no problem" with activities of daily living); Tr. 661–62 (treatment note from Ros finding "General Functioning/Social Adjustment" and "Daily Living Skills/Self-Care" to be "acceptable/within normal limits" and indicating a normal mental status exam except for a saddened affect and a dysphoric and anxious mood); Tr. 647 (treatment note from ARNP Hayes showing normal mental status exam except for anxious affect).

Royal contends the ALJ erred in finding ARNP Hayes saw Royal briefly and only for medication management because the record shows Royal's treatment plan included hourly sessions once a month for six months with ARNP Hayes and Royal testified she was, at the time, seeing ARNP Hayes for therapy an hour every two months. Doc. 17 at 17 (citing Tr. 66, 450). The question is not, however, whether evidence could have supported a finding that Royal saw ARNP Hayes for hourly therapy sessions; it is whether substantial evidence supports the ALJ's finding that Royal saw ARNP Hayes only for relatively brief medication management sessions. *See Martin*, 894 F.2d at 829. As explained, it does. To the extent Royal complains about the ALJ's failure to credit her testimony that she was seeing ARNP Hayes for an hour every two months for therapy, the ALJ found Royal's testimony "not entirely consistent with the medical evidence and other evidence in this record," Tr. 20, and Royal has not challenged that finding.

5

Royal also contends the ALJ erred in finding ARNP Hayes's opinions unsupported by the totality of the medical records because treatment providers and the state agency reviewing physician diagnosed Royal with depression and anxiety and because observations in notes from treatment providers are consistent with and support ARNP Hayes's opinion. Doc. 17 at 19–21. Royal points to portions of treatment records from ARNP Hayes; Parveen Khanna, M.D.; Sriramulu Aprameya, M.D.; William Hunt, M.D.; ARNP Faith Snyder; counselor Amy Ros, M.S.; and Greta Hollie, M.S.W. (the counselor who did Royal's intake at River Region). Doc. 17 at 20–21.

Again, the question is not whether evidence could be consistent with ARNP Hayes's opinion but whether substantial evidence supports the ALJ's finding that ARNP Hayes's opinion that medical records did not support marked and extreme limitations in mental functioning. As explained, it does.

To the extent Royal argues the ALJ improperly ignored the treatment records she cites, she establishes no harm. As described by Royal, the records from ARNP Hayes, Dr. Khanna, Dr. Aprameya, ARNP Snyder, and therapist Ros indicate Royal had occasionally worsening depression and anxiety with attendant changes in mood and affect, malaise, fatigue, sleep disturbance, and occasional suicidal thoughts (without a plan), but they do not assign functional limitations, and Royal fails to explain how such records support ARNP Hayes's findings of marked and extreme limitations. Doc. 17 at 20–21. Counselor Hollie's assessment consists mainly of Royal's self-reported symptoms, Tr. 583–602, and—as mentioned—the ALJ partially discredited Royal's testimony. To the extent the assessment includes Hollie's own observations (such as observing that Royal had a flattened affect, impaired concentration, and impaired immediate memory), *see, e.g.*, Tr. 594, Royal again fails to explain how those observations support ARNP Hayes's findings of marked and extreme limitations.

Royal does not contend Dr. Pomm was a treating physician such that his opinions would be entitled to substantial or considerable weight absent good cause for finding otherwise. *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Doc. 17 at 17–21.[6] Instead, she objects to the ALJ's decision to discount Dr. Pomm's opinion because Royal was not "even seen by this psychiatrist on a regular basis and she did not recognize his name when asked at the hearing on this matter," Tr. 24, arguing the record shows Dr. Pomm "was closely involved with her assessment and treatment planning," Doc. 17 at 17. This argument is overstated. The records show Dr. Pomm provided certifications for Medicaid and supervised ARNP Hayes and another person who saw Royal for medication management. Tr. 612, 613 (treatment notes from counselors including a signature from Dr. Pomm with the following language: "This is to certify that the services prescribed and recommended in this particular treatment plan are appropriate and medically necessary, as defined by the Florida Medicaid Program, based upon my clinical impressions and medical judgment."); Tr. 644, 645 (treatment notes from ARNP Hayes identifying Dr. Pomm as supervising physician); Tr. 647 (treatment note from ARNP Hayes bearing Dr. Pomm's signature but including no indication he saw Royal); Tr. 651, 653 (medication management notes from ARNP Hayes and Chelsea Bugg, P.A., identifying Dr. Pomm as supervising physician and bearing his signature). Regardless, even if there were record evidence that could support a finding that Dr. Pomm was more involved in

---

[6]A treating source is a physician, psychologist, or other acceptable medical source who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the treatment or evaluation required for the medical condition. 20 C.F.R. §§ 404.1502, 416.902 (2011). To the extent Royal's claim that Dr. Pomm was "closely involved with [her] assessment and treatment planning," Doc. 17 at 17, constitutes an argument that he was a treating physician, she cites no authority establishing that a physician can be considered a treating physician when he never saw the patient, as the record shows here. *See, e.g.*, Tr. 69 (Royal's testimony that Dr. Pomm never treated her); Tr. 645, 651, 653 (treatment notes identifying Dr. Pomm as supervising physician).

Royal's treatment than the ALJ found, his finding would still stand because substantial evidence supports it, specifically Royal's own testimony that Dr. Pomm never treated her. Tr. 69 (testifying that she did not recognize Dr. Pomm's name and he never treated her).

For the same reasons applying to ARNP Hayes's opinion, Royal also challenges the ALJ's finding that Dr. Pomm's opinion was unsupported by the totality of the medical records. Doc. 17 at 19–21. As explained, substantial evidence supports that finding.

Remand to reconsider ARNP Hayes's and Dr. Pomm's opinions is not warranted.

Royal argues the ALJ erred in finding her mental impairments failed to meet the listings for anxiety (Listing 12.06) and depression (Listing 12.04). The listings describe impairments severe enough to prevent gainful activity. *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). To meet Listing 12.04 for depression and Listing 12.06 for anxiety, a claimant must satisfy the criteria in paragraph B[7] of the listings. 20 C.F.R. Part 404, Subpart P, App'x 1 §§ 12.04, 12.06.[8] In paragraph B of those listings, the SSA considers the claimant's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* To satisfy the "paragraph B" criteria, the mental impairment

---

[7]The criteria set forth in Paragraphs A and C are not at issue here.

[8]The SSA revised the mental-disorders listings on September 26, 2016, effective January 17, 2017. *See* Soc. Sec. Admin., *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138-1 (Sept. 26, 2016). Because the ALJ issued his decision on August 24, 2017, the listings in effect at that time apply. *See id.* at 66138 n.1 (stating that the administration would "use the[ ] final rules on or after their effective date, in any case in which we make a determination or decision. We expect that [f]ederal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). All citations to the listings in this order refer to the version that took effect on January 17, 2017.

8

must cause "an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning." *Id*.

The ALJ considered the paragraph B criteria for Listings 12.04 and 12.06, finding mild limitations in understanding, remembering or applying information; moderate limitations in interacting with others; mild limitations in concentration, persistence, or pace; and mild limitations in adapting or managing oneself. Tr. 18–19. Because Royal's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, he found the paragraph B criteria were not satisfied. Tr. 19. While making this finding, the ALJ stated that Royal met no listing because "[n]o medical expert has opined the claimant's impairments, considered singly and in combination, are equivalent in severity to the criteria of any listed impairment." Tr. 18.

Royal contends this statement was incorrect because it ignored the mental capacity statements of ARNP Hayes and Dr. Pomm and an assessment by counselor Greta Hollie. Doc. 17 at 23. But, as explained, substantial evidence supports the ALJ's decision to disregard the opinions of ARNP Hayes and Dr. Pomm. And even assuming the ALJ erred by failing to explicitly weigh Hollie's assessment, Royal fails to explain how that assessment shows she has marked limitations in two or more areas or an extreme limitation in one area—which is what she needs to show to meet the listings for anxiety and depression. *See* Doc. 17 at 23 (claiming Hollie's assessment shows "the severity and limiting nature of Ms. Royal's mental impairments" without further argument). Thus, she shows no harm.

Royal also claims "[t]he only other factual support offered by the ALJ is [Royal's] statement to a provider in November of 2015 that she felt her symptoms were improving" and then argues this statement ignored evidence that her condition stopped improving and occasionally worsened. Doc. 17 at 23. She points to five treatment notes from ARNP Snyder in which ARNP Snyder noted Royal complained of anxiety and/or depression, Tr. 512, 516, 520, 545, 557, and one treatment note from

9

ARNP Snyder stating Royal "state[d] she has been having more anxiety," Tr. 561.

This argument mischaracterizes the ALJ's decision. The ALJ pointed to facts to support his decision as to each of the paragraph B criteria, including the lack of record of evidence on several points. *See* Tr. 18–19 (providing reasons for the limitations assigned to each of the paragraph B criteria, such as the lack of record of problems understanding treatment methods or following directions in taking medications; the lack of history of evictions, firings, arrests, avoidance of interpersonal relationships, or social isolation; and the lack of documented difficulty in maintaining personal hygiene or reacting poorly to changes in treatment or providers). Royal does not contend substantial evidence does not support those findings.

To the extent Royal contends the ALJ failed to weigh ARNP Snyder's treatment notes, Royal shows no harm because she fails to explain how a mere complaint of depression and/or anxiety shows she had marked or extreme limitations in the paragraph B criteria, which is the relevant inquiry.

Remand to reconsider whether Royal meets Listing 12.04 or 12.06 is not warranted.

Royal argues the ALJ erred when he found she could return to her past work as an automobile damage appraiser. Doc. 17 at 23–25. The ALJ found Royal could perform a range of light work:

> The claimant can sit, stand and walk for six hours each in an eight hour work day; lift and carry 20 pounds occasionally and 10 pounds or less more frequently; use her upper and lower extremities for the push/pull operation of arm, hand and foot/pedal controls occasionally; climb ramps and stairs occasionally; never climb ropes, scaffolding or ladders. All other postural activities could be done at least occasionally. She has no difficulties in using her upper extremities for reaching in all directions, handling, fingering and feeling. She has no limitation in her ability to see, speak and hear. She should do no work at unprotected heights. The claimant can interact with others on an occasional to frequent basis.

Tr. 19. Based on that RFC and the testimony of a vocational expert, he found Royal could return to her past relevant work as an automobile damage appraiser as that job is "generally performed." Tr. 24.

An ALJ may consider the testimony of a vocational expert in determining whether the claimant can perform past relevant work. *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005); *see also* 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) ("We may use the services of vocational experts … to help us determine whether you can do your past relevant work, given your residual functional capacity."). For a vocational expert's testimony to be substantial evidence, the ALJ must pose a hypothetical question that includes all of the claimant's impairments. *Winschel*, 631 F.3d at 1180. An ALJ is "not required to include findings in the hypothetical that [she] had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Substantial evidence supports the ALJ's conclusion that Royal could return to her past relevant work. At the hearing, the vocational expert testified that an individual with the RFC found by the ALJ[9] could return to Royal's past relevant work as an automobile damage appraiser, both as actually performed and as customarily performed. Tr. 83–84.

Royal complains the ALJ disregarded her testimony that her past work, as actually performed by her, required her to occasionally lift 50 pounds. Doc. 17 at 24 (citing Tr. 40). But the ALJ did not find Royal could perform her past relevant work as actually performed. He found she could perform her past relevant work as "generally performed," Tr. 24—a conclusion supported by the vocational expert's

---

[9]The hearing transcript indicates the ALJ said (in formulating his hypothetical question to the vocational expert) "never climb scaffolding, ropes and scaffolding" and did not mention climbing ladders. Tr. 84. While the ALJ appears to have misspoken, Royal does not assign any harm to the misstatement or the ALJ's including a prohibition on climbing ladders in the RFC in his decision.

11

testimony and not challenged by Royal.

Royal also contends it was error to find she could return to her past relevant work because (1) the vocational expert testified her past relevant work would be precluded if a limitation to simple, repetitive tasks were included, and the mental capacity assessments of ARNP Hayes and Dr. Pomm show she was limited to simple, routine tasks, Doc. 17 at 23–24; (2) the vocational expert testified that all work would be precluded if an individual would miss four or more days of work per month, and the mental capacity assessments of ARNP Hayes and Dr. Pomm stated she would miss four or more days of work per month, Doc. 17 at 24; and (3) her "non-mental impairments, including neurocardiogenic syncope and disorders of the spine ... would prevent her from doing so," Doc. 17 at 24. Royal has not challenged the RFC, and none of these arguments show the RFC found by the ALJ is inconsistent with Royal's past relevant work. Thus, they are unavailing.

To the extent Royal meant instead to challenge the RFC, the first two arguments fail because, as explained, the ALJ properly gave the opinions of ARNP Hayes and Dr. Pomm no weight. As for Royal's non-mental impairments, she merely lists diagnoses and symptoms but fails to explain how they are inconsistent with any particular aspect of the RFC and to explain how, if at all, the ALJ erred in evaluating the medical opinions regarding those impairments.

Remand to reconsider whether Royal could perform her past relevant work is not warranted.

Royal argues the SSA failed to meet its burden of proving she could perform other work in the national economy. Doc. 17 at 25. As Royal acknowledges, the Commissioner has no duty to offer evidence of other jobs a claimant can perform until the claimant proves she cannot perform her past relevant work. Doc. 17 at 25; *see also Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988) ("Initially, the claimant must prove that he is unable to perform his previous work. … Once that burden is met, the

[Commissioner] must prove that the claimant is capable … of engaging in another kind of substantial gainful employment which exists in the national economy."). Because Royal fails to make that showing, there was no error in the ALJ's failure to reach that issue. Remand on this point is not warranted.

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Emily Jane Bohannon Royal and close the file.

**Ordered** in Jacksonville, Florida, on September 23, 2019.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record